Mouldtec, Inc. v. Pagter & Partners Mouldtec, Inc. v. Pagter & Partners when it construed the term a rectangular crate having sloping side walls to mean, specifically with Claim 2, which is the only claim asserted in this case, specifically to mean that all four walls must slope. Now, the plain meaning, I don't think there's much dispute that when you say that something has sloping side walls, that's a plural term, it means at least two and cases have supported that and I don't think there's too much dispute about that. What the district court did to find that, to come to that conclusion, was to read in an object, one of the objects of the invention, but that's the key. It was one of them and there are several. There are three that are very important here and only one was focused on and the one that the court focused on, the court actually said, the issue is nesting without binding, so if I may, and stop me if you don't want me to do this, but these are buckets, essentially buckets that transport flowers and the invention has several features. The first column of the patent talks about those features. It mentions that there are a channel that goes around the bucket that has an upwardly facing channel and a downwardly facing part of it that goes around it like a rim and then inside the crate, if you will, there is a shoulder and that shoulder is also part of it. Okay, I'm going to stop you. Just to the heart of where I thought you were going, why is it not clear in the specification that the aim of the invention is to prevent binding? It talks a great deal about this and I guess it's column one, 21 through 29. I mean, that's obviously the heart of the invention is I think what Judge Kendall was going at where she said, this is about nesting and be able to do nesting and you need four sloping walls for nesting, end of story, right? Yes, Your Honor. So what is it in you think in this specification diminishes the reliance on the nine binding nesting aim of this invention? Well, in fact, Your Honor, it's the three objectives that I was talking about that in fact diminish that because the law is clear that you can't just read all of the objectives in and this talks about three of them. And yes, it starts out with the objective and it says that we're the aim. But if you go to the very beginning of that paragraph in A81, it says, if the empty crates are nested deeply into one another. Let's make sure, which patent are you on? It's page A81 is the one I'm looking at, but it's column one of the 330 patent. Okay, that's what I... Column one. Yes. And line 21. Okay. And actually, if I could for efficiency, just the very beginning of the patent, column one, the title doesn't say anything about nestability. It says packaging for cut flowers. Right under the title, it says the invention relates to a packaging for cut flowers comprising a rectangular crate with sloping sidewalls, has a base, has a foldable rectangular protective tube. Says nothing about whether there's any nestability. It is true, this is the only time that the word invention is used in the spec, in the very beginning. Now in this column one, it goes on to describe various features. One is nestability, and nestability actually without binding. So what that means is they can nest but there'd be no binding. And it does in fact say that that is the aim, but prior to it saying the aim, on line 21 it says if the empty crates are nested deeply. So it's proposing, it's saying this may happen. If this happens, the aim is so to improve the packaging. Then if you go down to line 30, it says to this end, the packaging in the paramble is characterizing that a shoulder extends between the top, and it goes on and gives what the structure of the shoulder is. I don't dispute that one aim of the shoulder, part of the limitation here, was in fact to allow some nesting without binding. But there are other objectives, and to be, and the important thing is that Judge, the district court... Why don't you point me to the other objectives? Sure. The second objective is right there on line 35. It says the said shoulder can serve as a support for a rectangular presentation column. And this is, it says, quote, this is important in particular in the case of somewhat longer cut flowers. So here's another example where they're saying here's something that may come up, and our shoulder can serve this function. That is a separate and independent function, has nothing to do with nestability, whether the shoulder can support a collar inside it so that flowers... Why does that diminish though that there's also got to be nestability? This is something else it should do, but why does that diminish or say it's not in lieu of the nestability stuff, right? Well, because Your Honor, because here's the thing. If you look at the independent claims, you will see that, and this is also true in the prosecution history, even though the prosecution history was never presented, it was discussed in the briefs, but they're all consistent. Independent claim one, if you look at one, two, and fourteen, each one of them features one of these three objectives, but not the other two. So it makes sense inherent within the patent that that's what the patentee was doing. The patentee was saying, I'm going to have one claim, so claim one, column three, mentions in element C, it says the shoulder is capable of supporting a presentation collar. That's column four, lines six through seven. It says, wherein the shoulder is capable of supporting a rectangular presentation collar. What's important is that claim one, claim one doesn't have the nestability without binding feature. It doesn't say that at all. And it also doesn't have the third feature, which I also wanted to mention, which was back in column one. And the third feature that's described as an object is that there is a downward facing portion of the collar that I mentioned. Not the collar, but the- Okay, I understand what you're saying, I think. The difficulty I'm having at comprehending it is because in all of these claims, they refer to sloping walls. And that's what we're construing here. So I don't think you're saying that there's two constructions of sloping walls with the nesting claim, sloping wall should be construed to have four sides. And then the other claim, sloping wall should only be construed as having less than four. Well, that is what we're saying. So sloping walls means different things in claims one and the other and two? We're saying that that's what the patentee contemplated, yes. Because in 14, it's the only time it uses the nesting language, the only time at all. And we believe it's a perfect example of claim- Do you know of any case where we've construed a term to mean one thing in one claim and another thing in another claim? I look for a case like that, Your Honor. I couldn't find one either way. So I don't. But I believe it would be consistent- When you say either way, we've certainly said many times that when a word is used in one way in one part of the patent claim or otherwise, it is assumed to mean the same thing in other places. I acknowledge that, Your Honor. That's not what I meant. I just meant that I did look for that. I didn't see that. But I think it makes sense here because of the construct that was done. I mean, it's no question that the law is very clear, that this Court has made clear that you don't have to read all of the features into the invention or into the claims. And if you look at what was done, the patentee made a point to have independent claim on one of the objects, one on the other, one on the other. You asked for construction that would involve sloped walls for all the claims. Did you propose two different constructions? Well, only claim two and four were ever asserted. So we proposed the same construction for both. Four was an independent claim and it was one that was just dropped by the time appeal came or by the time summary judgment came, rather. So Your Honor, we actually didn't face that issue at the District Court, meaning whether there would be different meanings. But claim two, the feature is this downward-facing channel and that has nothing to do with the shoulder. And that was something that was not shown in the prior art. That was something that during the prosecution history, the patentee talked about the claims only that related, that only that had that feature and not the nesting feature, distinguished the prior art on that feature only, on the downward-facing channel feature. There was another claim that's relied on by opposing counsel that was claim nine, application claim nine in the prosecution history. But application claim nine only had the nesting feature and it was amended to include the nesting feature. It was ultimately canceled though. And it's true that when the patentee was talking about that particular claim, it limited it to that claim only. And so with respect to that claim, there's a distinction because ours has some nesting without binding. But it was limited only to the claim. Then on other claims, the patentee said, well, no, the distinction is we have this downward-facing channel. That's not shown. And then on other claims, the argument was there was a presentation collar and that was a different feature. And so I certainly acknowledge what the court has said about, you know, you could have sloping sidewalls mean one thing in one claim and the other. But I believe that that works in this patent and I believe that's what was intended. And I believe that if you don't do that, it takes away from the plain meaning. Because the plain meaning of sloping sidewalls is two and the patentee here in claim two, which is the only one asserted. Your plain meaning argument though, are you suggesting, I mean, I guess Judge Bryson referred to the fact it's kind of schizophrenic. You're suggesting we have two different constructions of the terms and in different claims. And when we say we're going to use plain meaning here, the plain meaning is more than one or more than two. And then we're going to use the other meaning in the other claims because we know what the aim of the invention is, at least with respect to certain of the claims? Well, I think the plain meaning is always the same in the claims, which is just that it's two or more. But then when you get to claim 14, which is the only claim that mentions nesting, the only one, when you get to that claim, you have to construe it and say, well, since nesting's mentioned, and that's one of several features that's focused on, it would make sense for that claim 14 to say that it would include four. Because otherwise you couldn't have nesting. And also I would say, if you look at claim 14, it could still be construed as at least two. And you could still make it consistent because it's just tacked on at the end of the shoulder limitation. It says that there will be... The shoulder projects into the interior volume and extends between the top of the sloping walls, and it goes on. And it says, to prevent one crate from binding to another similar crate when nested. So even if you said if it's two or more, it would still be consistent when you had a crate that binded. If you didn't have a crate... When you had a crate that could nest. If you didn't have a crate that could nest, it would still be a fair reading, I believe. Good afternoon. Patrick McCarthy on behalf of Mold Tech. It seems like we only covered the first claim construction dispute during counsel's argument, and that relates to the rectangular crate having sloping sidewalls. Now, counsel led off by saying that he doesn't believe that there's any dispute about the plain meaning of the rectangular crate having sloping sidewalls in the claim language itself. Mold Tech argues and believes that the claim having sloping sidewalls, logic and grammar would dictate that all sidewalls are sloping. The applicants claimed a particular type of crate is a rectangular crate. Being a rectangular crate, it has four sidewalls. And then in the claim language, they said that those sidewalls are sloping. And if the court's not convinced that the language standing alone does have the plain meaning that all sidewalls must be sloped, we can look to the specification to enlighten us. Remind me what the district court... I thought the district court did concede that the ordinary meaning might include less than all four, but then went on to review it in the context of the specification, et cetera, right? I believe that the court found in view of the specification, the plain meaning is that all walls are sloping. Okay, I don't want to take your time. The important thing is that the plain meaning that aligns most closely with what the inventors were discussing is that all four walls are sloping. And interestingly, on counsel's initial argument, he noted that at claim one and he read this passage or at column one, line four, he read this passage and he said, this is the only place that the applicants described the invention. And what he read was a rectangular crate with sloping sidewalls, which are provided close to their top walls. What counsel did not point out is that immediately after that paragraph, the very next sentence points out the type of packaging that was being described in that general scope of the invention. And that packaging is described in EP-B0311174, the EP174 patent, which Moldtec pointed out in its briefing is directed to a nesting crate with all of its walls sloping. Another key portion of the specification is the only place in the detailed description where the applicants actually used the claim language, a crate having sloping sidewalls. And at column two, line 47, the applicants say the crate has sloping sidewalls such that it is nestable in a similar crate. No one has disputed that the only way two crates can nest together is if all the walls are sloping. So here where the applicants actually use the claim language in the specification, they're referring to all walls being sloping. And importantly, and this is a point that your honors made with respect to the distinction between an apparent different claim construction for sloping sidewalls in claim 14 and sloping sidewalls in claim two. If you take Padster's proposed plain meaning of sloping sidewalls and drop it in to that sentence of the specification, the applicants would have been saying the crate has at least two sloping sidewalls such that it is nestable in a similar crate. That doesn't make any sense. The applicants didn't consider a crate having sloping sidewalls to encompass anything other than a crate with all walls sloping. The reason it doesn't make any sense is because if a crate only has two sloping sidewalls, it cannot be nested. Now, counsel also touched briefly upon the prosecution history and argued that the statements which Moldtec relies on as being pertinent to this point from the prosecution history as only being applicable to application claim nine. And that's kind of a distraction by counsel because the point is that when the applicants were making reference to and explaining what the meaning of claim nine was, the asserted claim here was dependent upon that independent claim at that time. And the applicants even stated in the prosecution history, as all of this court's precedent follows, as being a dependent claim, it included all of the limitations of its independent claim, claim nine. So all of the statements related to dependent or independent claim nine at the time they were made and cited in our brief are applicable to the asserted claim here. I think because we only touched upon the first claim construction issue, I would like to just, if I could reserve a couple minutes, if you guys touch upon the second claim construction issue. That's not the way we work around here. Well, then if we wanted to talk briefly about the second claim construction issue. The second claim construction issue has to do with the shoulder limitation. And the shoulder limitation requires a shoulder extending between the top of the sloping side of the crate and the channel base or the bottom of the inner flange of the channel. This is just an alternative ground that would not be reached if we agreed with the district court on the sloping walls, correct? It's my understanding that both issues need to be decided. Why does the second issue need to be decided? I'm not clear. My understanding is that the accused crates have four sidewalls and the subject of the second claim construction dispute is with respect to the side vent sidewalls. If the first claim construction issue comes out as at least two, the reasoning behind the summary judgment order does not need to apply. I don't understand that. Let me ask the question this way. Sure. Do the accused boxes all have four sloping sidewalls? They do. So if we say that the claim requires that there be four sloping sidewalls, then... I'm sorry. If you have four sloping sidewalls, then you're not subject to infringement, correct? So... I'm sorry. Yes, and I apologize for the interruption. You have sloping sidewalls. Four. Okay, go ahead with your shoulder argument. Yes. I see. If you have four sloping sidewalls, then why are you advocating for the district court's claim construction that you need four? Because the sloping sidewalls limitation comes up twice in the claim. The first is just related to the rectangular crate itself. The second relates to the shoulder limitation and where the shoulder must exist. And the shoulder needs to exist on said sloping sidewalls. So with the understanding that all four walls must be sloping, the shoulder must exist on all four sidewalls. In the court's summary judgment order... Are they disputing? Is the other side dispute that if the claims are construed to require four sloping walls, that there's still infringement because of the shoulder? I'm really not following. Yes. So, yes. Under the court's claim construction of four sloping sidewalls, they still have advanced an infringement argument. You're saying that in the accused product, the shoulder is on how many sidewalls? So there are four different accused shoulders in the accused products. Subject to the summary judgment order... Sidewall? So there's a dispute about whether or not they're actually on the sidewall because there's recessed walls. But in any event, the patent owner has accused... There's two sides of the bucket that has handles.  On the other adjacent two sides, there is a recessed wall, which the patent owner has also accused of being a shoulder. That shoulder is in a different location with respect to the channel and served the basis of the court's summary judgment order. Is that the ground of the judgment of non-infringement? Correct. Okay. So just to make clear, there is a shoulder on each sidewall? There's an accused shoulder on each sidewall, yes. And I'm trying to understand the distinction from the claim. Which also doesn't say a shoulder on each sidewall, but doesn't also say that there are not shoulders on each of the four sidewalls. Right. So the court's claim construction found that each of the four sidewalls must have shoulders. And you just told us that in the accused product, each of the four sidewalls is sloping and has a shoulder. It has accused shoulder, yes. I'm just not admitting that Moldtec has shoulders because there is a dispute about whether or not they're actually shoulders. There are structures that the patent owner has pointed to and accused of being shoulders. And the district court said what? The district court said with respect to the two on the vent side, those are not the shoulders of the claim. And the reason being? Okay. Because the claim language is a shoulder extending between the top of the sloping sidewalls and the bottom of the inner flange or the base of the channel. So the court found that that plain meaning requires a shoulder that meets the channel base or the bottom of the inner flange. And the court found that the plain meaning of the channel base and bottom of the inner flange was effectively the inside corner of the channel. And the accused shoulders in the Moldtec products are well below both the bottom of the inner flange and the channel base, and therefore do not meet that claim limitation. Okay. So to tell us the judgment was based on whether the sidewall, whether the shoulder on each of the sloping sidewalls went all the way to the bottom? The judgment was based on whether or not the shoulders on each of the sidewall extends to the bottom of the inner flange, which if we look at the inner flange is defined in the claim and the specification as effectively the interior wall of the channel. And Judge Kendall found, rightly so, that the accused shoulders do not extend to the bottom of the inner flange and they do not extend to the base of the channel, which is the express claim language required for an infringement analysis. On page A-16, and this is in the district court's opinion there, there are photographs of the accused device. Can you explain to us exactly what she found with respect to those photographs? Sure. You have that page? I am, and I was looking for an easier reference point for your honor in relation to those. So if you look at on page A-16, the bottom right-hand picture, that is the top view looking down into a mold tech accused product. You see on the bottom right-hand side, you can see the outline of what would be a handle to carry that box. There are also two recessed vents, one of which being visible in the upper right-hand corner of that picture. Patchster has called that recessed vent a shoulder under claim two. If you look at figure six, which is on page A-13, that is a cut through of that vent showing, you can see the recessed wall. Well, along the right-hand side, there is a flange that defines an upper channel and a lower channel. The inner flange of that channel is the recessed wall. Was found to end at what is the base of the channel, which is identified by the line coming out to the right-hand side of the photograph on the bottom. The accused shoulder is well below the bottom of that inner flange and the base of the channel. And therefore, the court found no infringement. Where is the channel on the group figure two on A-16? Is that up at the top with the arrow coming out of it? And I'm sorry, Your Honor, I don't... When you say group figure... Group figure two on page A-16. Yes, yes. The bottom left-hand side, is that the upwardly facing channel of figure six up there where the arrow is coming out? I believe that what you're pointing to, yes. Okay. I see that I've run out of time. So do you want to start off by giving us a little clarification in terms of the relationship that you're hearing here between some conclusion on the bench on the sidewalls question and this other question? Yes, I'll do my best, Your Honor. With respect to the... We are asking that the sloping sidewalls be, for claim two, be at least two slide walls. And because we have asked for that construction and believe that it's correct, if you look in claim two... But let's assume hypothetically. Let me just start. Hypothetically, what if we were to agree with the district court's claim construction with regard to four sidewalls? Okay. Where does that leave the case? What other issues remain with respect? Oh, okay. If you were to agree with that hypothetically, then where that leaves the case is just... There's one other issue, but it's a really important issue. And that issue is that on A15, A16, when the court found... When the court gave its basis for non-infringement, and that was tied to the shoulder, what the court actually did was a new claim construction analysis. Brand new, one that we had never seen, one that we had never prepared for, one that our experts had never seen. In fact, the court didn't consider our expert reports that were part of the summary judgment. And the court does start out on page A14 and recites that it had originally said that it would just use the plain meaning of the shoulder limitation, okay? Not the sloping sidewalls, the shoulder limitation. But then if you look at A15, it refers to the patent figures. It refers to the patent specification. And it very clearly in the middle of the page of A15 says, the accused shoulder is not arranged on the inside of the channel. Now, that is a direct quote from the specification, from part of the preferred embodiment in the specification at column... Pardon me, I'll give you that. At column 2, line 58, it says a shoulder is arranged on the inside of the channel. And that issue is on appeal, and that came out of nowhere. So the court didn't actually use the claim construction that it told us it was going to and the parties fought about, frankly, in the... Okay, so can I just go back? I'm sorry, I may be the only one confused. Sure. So was her determination, the claim construction determination, that we spent 20 minutes talking about earlier, about whether or not four sloping walls are required, is that just has no relevance to infringement because they use four sloping walls? No, it does have relevance to infringement because two of their walls let's put it this way, two of their walls from our position, it's easier to read the shoulder limitation on two of their walls than with as opposed to their other two. They have two sets of walls that are... Okay, can you just... Let me ask the question another way. If we were to agree with her construction that four sloping walls are required in every single claim, does that dispose of the infringement question? No, Your Honor. You say that there's still a question as to whether the shoulders are found in the accused device as claimed. That's right. I'm sorry, I didn't mean to interrupt. And in fact, Your Honor, we were operating through summary judgment after she ruled on, after the district court ruled on the sloping sidewalks. But now I'm confused. Your friend told us in answer to a direct question that the accused devices had four sloping walls. So you are telling us that that's insufficient? Well, yes. In this case, Your Honor, we... So we were operating under the situation that there were four sloping sidewalls. And then our experts were fighting about whether there are four sides. Two of them look one way, two of them look the other way. There didn't seem to be any dispute that the shoulder would be... That the shoulder as called for in the claims was present in two of them. But in the other two sides, that's where we were disputing. And so if the court were to say, go with our construction... Let's assume the court goes with the other construction. Okay. And again, that's what we were operating under all along. We had the court's construction. Then we went to summary judgment. Then we went to experts. That's the way the Illinois District Court requires us to do it. Went through all the experts. We were operating under that assumption that all four would be required. But the dispute was over two of the walls. Whether the shoulder limitation itself, which talks about where the shoulder projects inwardly and has to be between a flange and a channel. And that's the language that it says. And that's what the experts thought about. They thought about whether on two particular walls that actually occurred. We said it did. The other side said it didn't. And well, what the district court said is essentially nothing. The district court started out in its opinion. What did she conclude? She concluded non-infringement based on the fact that the accused shoulder is arranged on the inside of the channel. Can you tell me where that is?  That's at A15 at the bottom of the page. And what you'll see is right after that sentence, the court says the claim language clarifies the location of the shoulder limitation as do the patent figures and specifications. That's a claim construction analysis. But the court had already said that the court had done that. And in fact, we had operated under a different claim construction, which was plain meaning. And that's what the experts had thought about. Then the court says the court need not and cannot turn to extrinsic evidence, which again is misplaced because that's not what was being talked about at this stage. The claim construction had already happened a long time ago. And it says such as expert reports, which to me tells me my expert reports, neither party's expert reports were considered on the issue of little infringement. To be clear, later on there's a question of equivalence, which was not on appeal here. It's not on appeal. And the court does mention something about the expert reports. So I don't want to be misleading. And then for good measure, you'll see on page A16, there's a cite to Vitronics, which says you don't need to cite to extrinsic evidence. So the issue on appeal here is that the court actually granted summary judgment sua sponte, which the case law says you can do as long as all of the parties have a chance to submit evidence on that point. Where on the pictures, either on page A13 or on A16, do you say the shoulder is in the accused device, on the sidewalls that have the vent? OK. On A13, the shoulder is, well, it's hard to point to it because there's not an arrow pointing to it, but if you look on the very left portion, it's protruding, if you will. And at the top of that is the shoulder, protruding towards the left of the paper. So where she says at 16, again, quoting, I gather from the specification, the accused products do not have a lateral protrusion extending between the top of the sloping walls of the crate and the channel base. Are you saying that that's correct or incorrect? Well, I'm saying that's not what the claim construction was. And not only that, the shoulder request. It says what the accused products have, not the claim construction. So it's the accused products do not have a lateral protrusion extending between the top of the sloping walls of the crate and the channel base or the bottom of the inner flange of the channel. We say that's incorrect. And that's what our, in fact, that's what our experts and everyone argue about in the summary judgment papers that were submitted that appear not to have been considered. And instead, what the court decided to do was say, we're going to say that the accused shoulder must be arranged on the inside of the channel. And if you think about that, that is about, I mean, if that had been proposed to us, I think there would have been some dispute, a lot of dispute about it, because arranged on the inside of the channel, what I think the court may have meant by that, again, this is claim construction at the wrong time, but what it may have meant is interior to the bucket. But the channels, there's two channels on the outside. So inside the channel could be up in the channel up here. It could be down in the channel there. I mean, it's not, it's very vague and it's not a construction that would make sense. All right. On page A-16, the photographs of the accused device, where's the shoulder on the side that has the vent? Sure. The shoulder is, if you see, it's the little top. It's at least the, you see where it says shoulder and the arrows are pointing down? Yeah. While it includes that, it specifically also includes if you go towards the left or towards the right. So the upper part of that sloping part, those little nubs include the shoulder as well. I'm not seeing any little nubs. What photograph are you, what figure are you? I'm sorry. I think you asked me to look at figure eight on A-16. Actually, I was looking at group figure two. Oh, I apologize. Group figure two, your honor, which one? On A-16, it's the two figures, the one to the left. Okay. Right. On that A-16, the one on the left, you can't see the shoulder because it's internal to the bucket, to the crate. You can't see it there. So the figure eight is the interior view of the vented wall. That's correct. And the shoulder is the structure that runs along the top of the vents. That's correct. Including at the ends of that structure is what I was trying to say. Not our fight. Okay. Thank you, your honor. Thank you. We thank both sides. The case is submitted. That concludes our proceedings for this morning.